DIXON, Justice.
On Christmas morning, 1971, at about 1:00 o’clock, Reginald Alexander entered the house occupied by his estranged wife and, for no apparent reason, fired several shots from a handgun, injuring his wife, mother-in-law and sister-in-law. He was jailed the next day, but was not billed (for attempted murder) until August 1, 1972. The three charges were consolidated for trial, and on October 28, 1976 he was acquitted on one charge and convicted of attempted manslaughter on the other two, receiving concurrent sentences of five years.
One assignment of error is urged before us, complaining of the denial of a motion to quash baséd on the denial of a speedy trial and the expiration of the time limitation of two years for the commencement of trial. C.Cr.P. 578.
*1119 Since the two year period for the commencement of trial has obviously been exceeded in the span between August 1, 1972 and October 27, 1976, the date the trial commenced, the indictments should have been dismissed (C.Cr.P. 581) unless there was an interruption or suspension of the prescriptive period. The second article of the Code of Criminal Procedure provides:
“The provisions of this Code are intended to provide for the just determination of criminal proceedings. They shall be construed to secure simplicity in procedure, fairness in administration, and the elimination of unjustifiable delay.”
The day after the bills of information were filed, the prosecutor obtained an order for the defendant to be returned from the State Penitentiary at Angola to be prosecuted on the attempted murder charges. The record does not disclose why he was in Angola, but the uncontradicted testimony of defendant and his father is that when he was returned to St. John the Baptist Parish from Angola, a deputy sheriff released him, remarking that he had served his time and that it would be better if he left town. We do not know the date of that event. A parole officer testified on the motion to quash that defendant was released on parole from Angola on February 27,1973, and that his “case materials” were received in Shreveport March 21, 1973. Defendant himself testified he stayed with his parents about three weeks before going to Shreveport.
In the interval between the filing of the bills on August 1, 1972 and defendant’s release on parole, defendant was arraigned. A minute entry on the back of the bills shows: “8-14-72 — Notice of Arr. for 9-7-72.” The minute entry dated September 7, 1972 states: “Accused present in court without counsel — will acquire his own attorney. Arraignment set for Sept. 28, 1972.” The next minute entry is dated October 5, 1972, when defendant was present in court with his lawyer and was arraigned. There is a notice in the record that was served on defendant concerning the scheduled arraignment for September 28, 1972, but none for the day the arraignment actually took place. The next notice informed defendant of a pre-trial conference fixed for December 27, 1972 and the fixing of the case for trial on January (no day) 1973. Neither of these two notices show an address for defendant, nor where he was served. However, the prosecutor sought and apparently obtained an order returning defendant to Angola. His motion, dated February 8, 1973, recited that defendant was then incarcerated in St. John the Baptist Parish jail. We can only conclude from these recitations, and from the evidence that defendant was released on parole from Angola on February 27, 1973, that he was incarcerated either in the parish jail or state penitentiary from about Christmas, 1972 until February 27, 1973.
On March 19, 1973, defendant was served with a notice that a pre-trial conference would be held on March 26, 1973, and that the trial was set for the April, 1973 term of court. Defendant’s address on that notice is shown as “East 20th Street, Reserve, La.” But on March 21, 1973, the date of the pre-trial was changed to March 27, 1973, and the trial was fixed for April 9, 1973. This notice was not served, and a note written by a deputy (who was never called to testify) states: “Info from his mother, Mrs. Ben Alexander — Subject is in Hospital in San Antonio, Texas with bleeding ulcers, where he went to visit his sister, Mrs. Patricia Brooks. Will not be out in time to appear — Therefore I return this paper.” On April 4,1974 the trial was scheduled for May 28, 1974. The notice, addressed to defendant at East 20th Street, Reserve, La., was not served. The deputy wrote a note on the bottom: “I have been checking with his mother Mrs. Ben Alexander and she claims he’s still in Texas and won’t be here for this date. She claims he is sick — Cannot serve.” (At all times, defendant’s parents lived on East 28th Street in Reserve).
A handwritten entry on the back of the bills of information, which does not appear in the typed minutes, shows that the judge ordered an attachment to issue for the defendant on May 28, 1974; the disposition of *1120 the attachment does not appear, nor does the attachment.
On August 9,1974, the case was fixed for trial on September 24, 1974; the notice addressed to defendant at East 20th Street, Reserve, La. bears a return indicating that it was served on defendant “through his mother Mrs. Ben Alexander.” On September 24, a continuance was granted at defendant’s request until October 16, 1974. The grounds for the continuance do not appear.
A bond was never fixed for defendant until April 15, 1975.
On the trial of the motion to quash, the only mention of Texas occurred when defendant’s mother was asked if she had told a deputy that defendant was in Texas. She did not admit it, and was not pressed for an answer. Defendant, himself, was not questioned about Texas, and denied that he had ever gone anywhere to avoid trial. He testified that the reason he was returned to Reserve from Shreveport was that he “took sick” in Shreveport. We can only conclude, from the silence of the record, that all parties must have understood that the information about defendant in San Antonio was a mistake. At any rate, there is no evidence that the whereabouts of defendant was not at all times known to defendant’s parole officer.
The trial judge’s stated reason for denying the motion to quash was “the sole and conclusive fact that Mr. Alexander was absent from his usual place of abode within the state when the state was trying to bring this matter to trial.”
Prescription against commencing trial is interrupted if:
“(1) The defendant at any time, with the purpose to avoid detection, apprehension, or prosecution, flees from the state, is outside the state, or is absent from his usual place of abode within the state; or
(2) The defendant cannot be tried because of insanity or because his presence for trial cannot be obtained by legal process, or for any other cause beyond the control of the state.” C.Cr.P. 579.
There was no evidence before the trial judge from which he could find that defendant was not either in the parish jail, Angola, at his parents’ home in Reserve, or at his proper residence in Shreveport under the supervision of his parole officer from the Department of Corrections until July of 1974, when he returned from Shreveport to his parents’ home in Reserve.
The State relies on State v. Elfert, 247 La. 1047, 175 So.2d 826 (1965), to support its argument that prescription was interrupted September 7, 1972, when he appeared for arraignment without his attorney. Their reliance is misplaced. In the Elfert case the defendants appeared on the day of trial without counsel, and the case was continued to obtain representation for the defendants. The trial date was only ten days short of two years from the date the bill of information was filed. The court was correct in its result, but the Elfert case cannot be interpreted to stand for the proposition that there will be an interruption of prescription on every occasion when the defendant appears in court without his lawyer.
Here, the defendant was in custody; there was no showing that the State had made it possible for him to obtain a lawyer, nor that the State could not have appointed a lawyer to represent defendant at the arraignment. In effect, the State suggests we permit it to interrupt prescription by bringing a prisoner, who has not had the opportunity to obtain or have appointed counsel, into court for a proceeding in which counsel is necessary.
We need not decide here whether bringing defendant into court for arraignment before he had a lawyer suspended prescription. If there was suspension, it only lasted until, at the latest, the date of the arraignment, October 5, 1972. The prosecution would then have prescribed before August 12, 1974, when defendant was served, through his mother, notice of a new trial date, September 24, 1974.
Since there has been no showing of an interruption or suspension of the running of the two year period fixed by statute for the commencement of trial, the time limitation has expired.
*1121 The convictions and sentences are reversed and set aside, the indictments are dismissed (C.Cr.P. 581), and the defendant is discharged.
SANDERS, C. J., dissents.
SUMMERS, J., dissents. Based on the finding of fact by the trial judge, I believe defendant’s absence delayed the trial.